TOWN OF GROTON *v.* UNITED STEELWORKERS
OF AMERICA
(SC 16164)

McDonald, C. J., and Borden, Norcott, Katz and Peters, Js.

_____

Argued November 4, 1999—officially released March 17, 2000*

*Thomas W. Meiklejohn,* for the appellant (defendant).

*Susan M. Phillips,* with whom was *Harry E. Calmar,* for the appellee (plaintiff).

*Opinion*

KATZ, J. The dispositive issue in this appeal is whether an arbitral award reinstating to employment an employee, who had been convicted of embezzlement

---

\* March 17, 2000, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Superceded. See *Groton* v. *United Steelworkers of America,* 254 Conn. 35, 757 A.2d 501 (2000).

of his employer's funds based solely upon his plea of nolo contendere, violates public policy. The defendant union, United Steelworkers of America, appeals from the judgment of the trial court in favor of the plaintiff, the town of Groton, vacating an arbitration award that reinstated the employment of David Warren, whom the plaintiff had discharged after he was convicted of embezzlement. That conviction was predicated solely upon his plea of nolo contendere.

The defendant claims that the trial court improperly applied the "public policy" exception to the general rule of deference to arbitration awards. Pursuant to an unrestricted submission,[1] an arbitrator ruled that Warren had been discharged from his employment without just cause, in violation of the governing collective bargaining agreement, and ordered him reinstated with limited back pay. The plaintiff filed an application in the trial court to vacate the award, and the defendant filed a cross application to affirm the award. After determining that the award had been in violation of public policy, the trial court rendered judgment granting the plaintiff's application to vacate and denying the defendant's application to confirm.

The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023, now § 65-1, and General Statutes § 51-199 (c). Because we agree with the defendant that the trial court acted improperly, we reverse the judgment of the trial court.

The detailed award of the arbitrator discloses the following undisputed facts and procedural history. Warren was employed by the plaintiff as a weighmaster at the town landfill until April 14, 1997, when he was discharged. His duties included selling daily landfill permits to town residents, who would pay him for the

---

[1] Both parties agree that the submission to the arbitrator was unrestricted.

permits, and he was responsible for accounting for the permits that he sold and turning the money received over to the plaintiff.

On November 20, 1996, Warren was charged by the Groton police department with two counts of larceny by embezzlement in the sixth degree in violation of General Statutes § 53a-119 (1)[2] and General Statutes § 53a-125b,[3] and one count of violating a Groton town ordinance. These charges arose out of allegations that Warren had taken money for permits and kept it for himself, rather than turning it in to the plaintiff. On November 22, 1996, the police notified Warren's supervisor of his arrest and, in response, the supervisor transferred Warren temporarily to the highway division of the town and notified him that "[o]nce court action is final, we will review its findings and take any disciplinary action, as appropriate, which may include action up to and including employment termination."

On December 4, 1996, Warren's criminal defense attorney and the state's attorney reached a plea bargain pursuant to which the state would drop one of the larceny counts and the municipal ordinance count, Warren would plead nolo contendere to the remaining larceny count, and the state would recommend a fine of $85 plus $15 in court costs. The arbitrator found that

[2] General Statutes § 53a-119 provides in relevant part: "Larceny defined. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:

"(1) Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody. . . ."

[3] General Statutes § 53a-125b provides: "Larceny in the sixth degree: Class C misdemeanor. (a) A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less.

"(b) Larceny in the sixth degree is a class C misdemeanor."

Warren had agreed to this plea bargain because contesting the charges at trial would cost him $5000 in legal fees, representing a significant percentage of his gross annual salary of approximately $35,000, and a larger percentage of his net annual salary. Warren thereupon entered a plea of nolo contendere to the larceny count, upon which the court rendered a judgment of conviction and sentenced him according to the plea bargain.

The next day, Warren's supervisor contacted the clerk of the court and learned of Warren's conviction. Following a lengthy series of meetings among the supervisor, Warren and his union representative, on April 14, 1997, the plaintiff terminated Warren's employment.

The defendant filed a grievance on Warren's behalf challenging the termination. Upon the plaintiff's denial of the grievance, the matter was submitted to arbitration pursuant to the collective bargaining agreement between the plaintiff and the defendant. The collective bargaining agreement provided in relevant part: "All discharges, demotions, and/or suspensions will be for just cause only . . . ." The plaintiff's personnel rules provided for possible disciplinary action for "employee misconduct," two examples of which were stated as: "(a) Conviction of a felony or misdemeanor arising out of the performance of duty or within the scope of employment which may affect the performance of duty"; and "(h) Misappropriation, destruction, theft or conversion of municipal property or equipment."[4]

---

[4] Rule 10 of the plaintiff's personnel rules provides:

"EMPLOYEE DISCIPLINE

"SCOPE: This rule governs the imposition of disciplinary action for employee misconduct. Section 1 contains examples of employee misconduct, while Section 2 contains procedures governing the imposition of disciplinary action.

"Section 1. EXAMPLES OF EMPLOYEE MISCONDUCT

"The following are examples of employee conduct for which disciplinary action may be instituted. This list is not all inclusive and disciplinary action may be imposed for other forms of employee conduct which are detrimental to the Town of Groton:

"(a) Conviction of a felony or misdemeanor arising out of the performance of duty or within the scope of employment which may affect the performance of duty.

"(b) Non-performance of job duties or job performance below the established requirements of the position.

"(c) Absence without leave.

"(d) Disobedience of orders from a superior or other acts of insubordination or disrespect.

"(e) Negligence resulting in damage to municipal property or equipment or constituting a threat to the safety of the employee or fellow employees.

"(f) Violation of established rules and procedures governing employee behavior or conduct.

"(g) Habitual tardiness and/or absenteeism; the abuse of sick or annual leave.

"(h) Misappropriation, destruction, theft or conversion of municipal property or equipment.

"(i) Falsification of information on an application for employment, insurance records or other employee records maintained by the Town.

"(j) Failure to properly report accidents or personal injuries.

"(k) Use, consumption or being under the influence of intoxicating liquors, narcotics, or other controlled substances while using municipal equipment or during working hours. The use of prescription drugs which may impair employee actions so as to be dangerous to the employee or other fellow employees or cause said employee to be unable to perform the duties and responsibilities of his/her position.

"(l) Unauthorized disclosure of confidential employee records or information.

"(m) Harassment of other employees.

"SECTION 2. IMPOSITION OF DISCIPLINARY ACTION

"(A) Authority to Impose Disciplinary Action

"Disciplinary action for employee misconduct may be initiated or recommended by employees having supervisory responsibilities over the person involved. However, only Department Heads or appointing authorities may impose disciplinary action involving suspension, demotion or discharge.

"(B) Forms of Corrective Action

"The forms of corrective action which may be imposed are listed in progressive order of severity as follows:

"(1) Oral reprimand (warning)

"(2) Written reprimand

"(3) Temporary reduction in pay

"(4) Suspension

"(5) Demotion

"(6) Discharge

"Corrective action shall be, whenever possible, of an increasingly progressive nature in accordance with the above paragraph. The supervisor or appointing authority, however, retains the right to skip steps depending on

Because the parties were unable to agree on how to state the issues submitted to the arbitrator, he framed the relevant issue[5] as follows: "Whether the [plaintiff] had just cause under Article XVIII of the collective bargaining agreement in terminating David Warren for the following reasons: (1) his conviction of a crime arising out of his employment . . . . If not, what shall the remedy be?"[6] The plaintiff relied exclusively on subsection (a) of § 1 of personnel rule 10, namely, the fact of Warren's conviction of larceny in the sixth degree by embezzlement following charges that he had stolen funds that he was obligated to turn in to the plaintiff. The plaintiff, however, did not rely on subsection (h) of § 1 of personnel rule 10. In other words, the plaintiff did not seek to establish by independent evidence that Warren had *in fact* engaged in the larcenous conduct.

The arbitrator determined that, under the circumstances of the case, the fact of the conviction did not

the severity of the offense or upon the past work record of the employee involved."

[5] A second issue, involving whether the plaintiff improperly had denied Warren credit for certain unused personal and vacation days he had accumulated prior to his termination, is not involved in this appeal.

[6] The plaintiff also claimed that during one of the various meetings noted previously, Warren had been insubordinate in violation of a different subsection of the personnel rules by refusing to answer questions about his conduct regarding the allegedly mishandled funds. According to the arbitrator, Warren had not answered those questions because of confusion on the part of both the plaintiff and the defendant over the appropriate warnings Warren was to have received. Consequently, the arbitrator exonerated Warren of the insubordination charge.

Although the plaintiff did not raise this issue in its application to vacate, the trial court addressed it. Moreover, although the trial court appeared to endorse the plaintiff's position on this issue, the court rested its decision to vacate the award, not on this basis, but on the basis of the conviction. The defendant claims on appeal that the trial court improperly addressed this issue because it was not within the scope of the pleadings. We need not address this claim, however, because we do not read the trial court's decision as resting on this ground, and the plaintiff has not renewed on appeal *its* claim on this issue as an alternate ground on which to affirm the trial court's judgment.

establish just cause for Warren's termination. The arbitrator first noted his agreement with the proposition that "[i]f Warren in fact sold daily landfill permits and intentionally pocketed the money instead of turning it over to the [plaintiff], there would be just cause to discharge Warren from his employment. Discharge would be justified even if Warren had done so on only a single occasion. Any theft of [t]own funds for which an employee is responsible constitutes such an egregious breach of trust that summary discharge clearly would be justified. There would be no need or requirement to apply principles of progressive discipline."

The arbitrator noted, however, that the plaintiff had relied, not on any independent proof that Warren had in fact stolen such funds, but solely on the fact of conviction under the circumstances disclosed by the record. Those circumstances were that Warren neither had pleaded guilty to the crime charged nor had he been found guilty after a trial. He had, instead, been convicted after a plea of nolo contendere pursuant to the plea bargain.

The arbitrator then turned to the legal effect of a plea of nolo contendere. In this regard, the arbitrator relied on this court's decision in *Lawrence* v. *Kozlowski*, 171 Conn. 705, 711–12 n.4, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977), holding that neither a plea of nolo contendere nor a conviction based upon such a plea can be used in a subsequent proceeding to establish (1) an admission of guilt or (2) a res judicata effect regarding guilt. The arbitrator also noted this court's statements in *Lawrence*, citing C. McCormick, Evidence (2d Ed. 1972) § 265, p. 633, that pleas of nolo contendere may be entered for reasons of convenience and without much regard to guilt and collateral consequences, and are often entered with the expectation that they will not be used against the accused in subsequent proceedings.

*Lawrence* v. *Kozlowski,* supra, 711–12 n.4. Thus, the arbitrator, quoting from *Lawrence,* concluded that, although such a plea might be regarded as a tacit admission of guilt, because of their inconclusive and ambiguous nature, the plea and conviction " 'should be given no currency beyond the particular case in which it was entered.' " See id.

Applying these principles to the facts before him, the arbitrator noted that Warren had entered his plea with the expectation that it would not be used against him in subsequent proceedings. The arbitrator also noted that Warren had compelling reasons of convenience to enter such a plea, namely, the significant portion of his gross and net annual income that it would have cost him to go to trial, balanced against the modest fine and the advice of his attorney that he was not admitting any guilt. On the basis of these reasons, the arbitrator concluded that Warren's conviction of a crime arising out of his employment did not constitute just cause to terminate his employment under the collective bargaining agreement.

The plaintiff applied to the trial court to vacate the award, and the defendant cross applied to confirm the award. In its application to vacate, the plaintiff claimed that the award violated clear public policy.[7] The trial court determined that the arbitrator's award violated public policy. Accordingly, the court rendered judgment vacating the award.

The defendant claims that the trial court misapplied the public policy exception to the general rule of defer-

---

[7] The plaintiff also claimed that the award was in manifest disregard of the law. In light of its conclusion that the award violated public policy, the trial court did not address that claim. Because, as we conclude in this opinion, the arbitrator followed our well established law regarding the effect of a nolo plea, his decision that a conviction predicated solely upon that plea did not constitute just cause for termination did not display a manifest disregard of the law.

ence to an arbitrator's award made pursuant to an unrestricted submission. The defendant argues that, because Warren's conviction was based on a plea of nolo contendere, the conviction: (1) cannot be used to establish that he in fact embezzled funds from the plaintiff; and (2) cannot be given any other legal effect. Thus, the defendant contends that "[t]here is no conflict with public policy unless the award approves some conduct which offends public policy. The award cannot be read to approve of theft unless [Warren] is *actually guilty of theft*. There has been no finding of guilt which can be relied upon in this proceeding. Therefore, the award does not conflict with public policy." (Emphasis in original.)

We agree with the defendant. The award did not conflict with public policy because it did not approve any theft. To conclude that the award in the present case conflicted with public policy, the trial court basically would have had to determine that Warren had embezzled, a finding that, because of the plaintiff's exclusive reliance on Warren's nolo plea, was not made. In the absence of this finding, the plaintiff's position distills to what is essentially an argument that the arbitrator's adherence to our well established jurisprudence that a nolo plea is of limited precedential value was itself a violation of public policy. For the reasons articulated herein, we conclude that the trial court improperly vacated the arbitrator's decision that Warren's conviction of a crime based solely upon his nolo plea did not constitute just cause to terminate his employment under the collective bargaining agreement.

We have stated on numerous occasions that arbitration is a creature of contract, "whereby the parties themselves, by agreement, define the powers of the arbitrators." *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 185, 530 A.2d 171 (1987); see *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local*

*998*, 248 Conn. 108, 122, 728 A.2d 1063 (1999); *O & G/ O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145, 525 A.2d 1271 (1987); *Board of Education* v. *AFSCME, Council 4, Local 287*, 195 Conn. 266, 269, 487 A.2d 553 (1985). When the parties have established the authority of the arbitrator, "the extent of our judicial review of the award is delineated by the scope of the parties' agreement." *Garrity* v. *McCaskey*, 223 Conn. 1, 4, 612 A.2d 742 (1992), citing *American Universal Ins. Co.* v. *DelGreco*, supra, 185. When the arbitration is consensual and the parties have not restricted the scope of the arbitrator's authority, "the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission." *Garrity* v. *McCaskey*, supra, 4; *Hartford* v. *Board of Mediation & Arbitration*, 211 Conn. 7, 14, 557 A.2d 1236 (1989); *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 415–16, 544 A.2d 186 (1988).

These long-standing principles governing consensual arbitration are, however, subject to certain exceptions. In *Garrity* v. *McCaskey*, supra, 223 Conn. 6, this court listed three recognized grounds for vacating an award in addition to those statutory bases under General Statutes § 52-418: "(1) the award rules on the constitutionality of a statute; *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 344, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); (2) the award violates clear public policy; *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 339, 555 A.2d 406 (1989); or (3) the award contravenes one or more of the statutory proscriptions of § 52-418. *Carroll* v. *Aetna Casualty & Surety Co.*, [189 Conn. 16, 22–23, 453 A.2d 1158 (1983)]." We recently stated that "[t]he judicial recognition of these grounds for vacatur evinces a willingness, in limited circumstances, to employ a heightened standard of judicial review of arbitral conclusions, despite

the traditional high level of deference afforded to arbitrators' decisions when made in accordance with their authority pursuant to an unrestricted submission." *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 428, 747 A.2d 1017 (2000).

In *Schoonmaker* we held that, when a challenge to a voluntary arbitration award rendered pursuant to an unrestricted submission raises a legitimate and colorable claim of violation of public policy, the question of whether the award violates public policy requires de novo judicial review. Id., 429. The challenge in the present case raises such a claim. We therefore undertake de novo review of the award.

"The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy." *Garrity* v. *McCaskey*, supra, 223 Conn. 7. A challenge that an award is in contravention of public policy "is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. *Stamford* v. *Stamford Police Assn.*, [14 Conn. App. 257, 259, 540 A.2d 400 (1988)]; *Board of Trustees* v. *Federation of Technical College Teachers*, [179 Conn. 184, 195–96 and n.6, 425 A.2d 1247 (1979)]. When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. *Board of Trustees* v. *Federation of Technical College Teachers*, supra [195]. Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascer-

tained by reference to the laws and legal precedents and not from general considerations of supposed public interests. [*United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 43, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)]; see *W. R. Grace & Co.* v. *Rubber Workers*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983) . . . . *New Haven* v. *AFSCME, Council 15, Local 530*, supra, [208 Conn.] 417. The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. [*New Haven* v. *AFSCME, Council 15, Local 530*, supra, 417.] Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the [arbitrator's] award clearly violates an established public policy mandate." (Internal quotation marks omitted.) *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 339–40, 555 A.2d 406 (1989). Applying the appropriate scope of review, we conclude that, based upon the law as we have articulated it and the undisputed facts of the present case, the arbitrator's award did not violate any clear public policy.

The employment context appropriately involves a number of legitimate expectations on the part of the employer that a conviction of embezzlement is likely to undermine. Encompassed within the public policy against embezzlement is the policy that an employer should not be compelled to reinstate an employee who has embezzled the employer's funds. Therefore, if Warren's conviction for embezzlement of his employer's funds had followed either a guilty plea or a trial, the employer would have been justified in imposing appropriate discipline, including termination, and an arbitral award requiring his reinstatement to employment would have violated clear public policy. See, e.g., *Board of Education* v. *Local 566, Council 4, AFSCME*, 43 Conn. App. 499, 500–501, 683 A.2d 1036 (1996), cert.

denied, 239 Conn. 957, 688 A.2d 327 (1997) (where grievant had pleaded guilty to and been convicted of fraudulently diverting union funds, award reinstating him to position with responsibility for publicly owned property violated public policy); see also *State* v. *Council 4, AFSCME*, 27 Conn. App. 635, 641, 608 A.2d 718 (1992) (where grievant admittedly had misused state funds by cashing falsely generated public assistance checks, award of reinstatement to employment violated public policy). In either instance, the record would be sufficient to establish that the employee had in fact stolen from his employer. The guilty plea would constitute an admission of guilt; see *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711 n.4; and the conviction after trial would be sufficient to establish the fact of the theft, under established principles of issue preclusion. See *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296–307, 596 A.2d 414 (1991). In either of those instances, the public policy against theft also would include the policy that an employer should not be required to retain in a position of financial trust an employee who has been established to have stolen.[8]

The question posed by this appeal is whether the arbitrator's reinstatement of Warren violated a clear public policy. To vacate the award, the trial court, in effect, *was required as a matter of law*, to determine that a conviction *following a plea of nolo contendere*, as opposed to a plea of guilty or a conviction after a trial, established just cause for Warren's termination.

---

[8] When an employer reasonably concludes that an employee has stolen from him, he may take appropriate action and impose appropriate discipline pursuant to the operative collective bargaining agreement, personnel rules and other relevant materials regardless of whether he chooses to press criminal charges. By our opinion today, we do not mean to suggest otherwise. We conclude only that when an arbitrator is faced with a conviction based solely upon a nolo plea that was entered in good faith reliance upon advice of counsel, public policy does not require that he find just cause for the employee's termination.

The plaintiff in this case attempts to blur the distinction between conviction and guilt, arguing that an arbitral award requiring an employer to reinstate an employee who has been terminated following his conviction of embezzling the employer's funds violates public policy irrespective of whether the employee's conviction followed a trial, a guilty plea or a nolo contendere plea. The decision in this case did not, however, turn simply on whether the threat to the employer's legitimate expectations was removed or significantly ameliorated by the fact that the conviction of embezzlement rested upon a plea of nolo contendere, as opposed to a conviction resulting from a plea of guilty or a trial. Rather, it turned on the arbitrator's finding that, because the employer had not sought to prove independently that Warren had embezzled its funds, relying exclusively on his nolo plea, the employer established "little or nothing about [Warren's] guilt or innocence . . . ."

Although a conviction following a plea of nolo contendere has the weight of a final adjudication of guilt, and shares some characteristics of a guilty plea,[9] its limited evidentiary value is undisputed. As we have stated previously, unlike a plea of guilty, "a plea of nolo contendere is merely a declaration by the accused that he will not contest the charge, and even though followed by a finding of guilty and the imposition of a fine or other penalty, is not admissible, either as a verbal admission or an admission by conduct. *Casalo* v. *Claro*, 147 Conn. 625, 632, 165 A.2d 153 [1960]. Nor is it admissible to affect a party's credibility, as evidence of an arrest, or as res judicata establishing that the plaintiff was engaged in a criminal act. *Krowka* v. *Colt Patent Fire*

___

[9] See *North Carolina* v. *Alford*, 400 U.S. 25, 35–36 n.8, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (plea of nolo contendere has same legal effect as plea of guilty on all further proceedings); *Boykin* v. *Alabama*, 395 U.S 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (nolo contendere plea constitutes waiver of all nonjurisdictional defects).

*Arm Mfg. Co.*, 125 Conn. 705, 713, 8 A.2d 5 [1939]; see also Holden & Daly, Connecticut Evidence, § 103f. Pleas of nolo contendere may be entered for reasons of convenience and without much regard to guilt and collateral consequences. [C. McCormick, supra] § 265, p. 636. Even though the plea may be regarded as a tacit admission, its inconclusive and ambiguous nature dictates that it should be given no currency beyond the particular case in which it was entered. *A. B. Dick Co.* v. *Marr*, 95 F. Sup. 83, 101 (S.D.N.Y. [1950]); *State* v. *Thrower*, 272 Ala. 344, 346, 131 So. 2d 420 [1961]; *Federal Deposit Ins. Corporation* v. *Cloonan*, 165 Kan. 68, 90, 193 P.2d 656 [1948]; *State* v. *Fitzgerald*, 140 Me. 314, 318, 37 A.2d 799 [1944]; *State* v. *LaRose*, 71 N.H. 435, 439, 52 A. 943 [1902]; *Honaker* v. *Howe*, 60 Va. (19 Gratt.) 50, 53 [1869]; see 4 Wigmore (3d Ed.) § 1066; annot., 18 A.L.R.2d 1287, 1314 § 5; annot., 152 A.L.R. 253; Fed. R. Crim. Procedure 11 (e) (6)." (Internal quotation marks omitted.) *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711–12 n.4.

On review of an arbitration award, even on a claim of a public policy violation, neither the trial court nor this court has authority to make findings of fact that the arbitrator did not make. See, e.g., *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, supra, 484 U.S. 36–38; *New York State Correctional Officers & Police Benevolent Assn., Inc.* v. *New York*, 94 N.Y.2d 321, 326–27, 726 N.E.2d 462, 704 N.Y.S.2d 910 (1999). Notably, the arbitrator in the present case made a factual finding that Warren had consulted an attorney, who, in reliance on *Lawrence*, had advised him that a plea of nolo contendere was not an admission of guilt.

In the present case, there is, therefore, no factual foundation whatsoever for the assertion that Warren embezzled even one penny from his employer. As the arbitrator observed, for all anyone knows, Warren may have been accused falsely by a disgruntled landfill user or by someone else who harbored unfounded suspi-

cions of misconduct. The arbitrator made a factual finding, which is binding on this court, that Warren had pleaded nolo contendere because, for financial reasons, he had deemed such a plea a more convenient and cleaner way to resolve the charges against him.

Our case law does not permit the inference that a nolo contendere plea automatically fills in this gap in the factual findings made by the arbitrator. *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711–12 n.4. The holding in *Lawrence* has not been questioned until now. The plaintiff in this case asks us to conclude that, although a plea of nolo contendere and a conviction based thereon may not be admitted into evidence in a subsequent civil action or administrative proceeding to establish either an admission of guilt or the occurrence of criminal conduct, it is unfair to expect an employer to set aside its legitimate expectations, solely because of the differences between a conviction based upon a guilty plea or one resulting from a trial and a conviction based upon a nolo contendere plea.[10] The employer, however, need not set aside those expectations by reinstating an employee convicted of embezzling funds. The employer may vindicate those expectations by demonstrating the misconduct that undermines its interests.

The trial court's conclusion that the award in the present case conflicted with public policy therefore

---

[10] We see no legitimate reason why we should treat a conviction following a nolo plea in the employment context differently from the way we traditionally have treated it in the civil and administrative arenas where other equally important interests are at stake. In deciding to treat a conviction following a nolo plea differently from a conviction resulting from a trial or a guilty plea, we have engaged in a balancing test and determined that facilitating resolution of criminal cases is paramount. To assure an accused person that his plea of nolo contendere will not be used against him, as in this case, and then to allow the plea to be the basis for his termination from employment, particularly when the arbitrator has recognized the financial considerations that induced the plea, would be both unfair and, arguably, a violation of the plea agreement.

*required* a determination that Warren had embezzled, a finding that, because of the employer's reliance on Warren's nolo plea, was not made. In the absence of this finding, the trial court could not conclude properly that the arbitrator's adherence to our well established jurisprudence that a nolo plea is of limited precedential value was itself a violation of public policy. Obviously, it was not.

The public policy exception to arbitral authority should be construed narrowly and a "court's refusal to enforce an arbitrator's interpretation of [a] collective bargaining [agreement] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal quotation marks omitted.) *Watertown Police Union Local 541* v. *Watertown*, supra, 210 Conn. 340. Applying the appropriate scope of review, we conclude that, based upon the undisputed facts of the present case, the award did *not* violate the clear public policy against embezzlement because it was premised *solely* upon a conviction that followed a plea of nolo contendere.

The judgment of the trial court is reversed and the case is remanded with direction to confirm the arbitrator's award.

In this opinion NORCOTT, J., concurred.

PETERS, J., concurring in the judgment. As my concurrence in the companion case of *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 456, 747 A.2d 1017 (2000), indicates, I disagree that de novo review is the proper standard for judicial scrutiny of any and all arbitral awards raising questions of public policy. Because the public policy issue was squarely presented to the arbitrator in this case, I am

persuaded that his resolution of the controversy deserves the same deference that we normally afford to arbitral awards.

Whatever the proper test may be, however, I agree with the conclusion reached by the majority opinion. The record before the arbitrator in this case establishes no evidentiary foundation for the contention of the plaintiff, the town of Groton, that David Warren, its employee and a member of the defendant union, United Steelworkers of America, had embezzled funds. In the absence of the requisite evidentiary foundation, we must uphold the arbitrator's decision setting aside Warren's discharge.

I respectfully concur in the judgment.

MCDONALD, C. J., dissenting. I agree with Justice Borden that the arbitrator's award violated public policy and properly was vacated.

The town's personnel rules explicitly provided that conviction of an offense involving the employee's duties was a basis for termination. Under the majority's reasoning, a dishonest employee very simply avoids the application of the personnel rule by pleading nolo contendere. Where, as here, the conviction has legal effect, I agree with the majority of courts and the Second Circuit that "there is no valid distinction between a conviction upon a plea of nolo contendere and a conviction after a guilty plea or trial." *Sokoloff* v. *Saxbe*, 501 F.2d 571, 574 (2d Cir. 1974); see also *Qureshi* v. *Immigration & Naturalization Service*, 519 F.2d 1174, 1176 (5th Cir. 1975) (deportation based on conviction after plea of nolo contendere); *Ruis-Rubio* v. *Immigration & Naturalization Service*, 380 F.2d 29, 30 (9th Cir.), cert. denied, 389 U.S. 944, 88 S. Ct. 302, 19 L. Ed. 2d 302 (1967) (same); *Masters* v. *Commissioner of Internal Revenue*, 243 F.2d 335, 338 (3d Cir. 1957) (impeachment based on conviction); *United States ex rel. Bruno* v.

*Reimer*, 98 F.2d 92, 93 (2d Cir. 1938) (deportation); *In re Eaton*, 14 Ill. 2d 338, 343, 152 N.E.2d 850 (1958) (disbarment); *State Bar Grievance Administrator* v. *Lewis*, 389 Mich. 668, 680–81, 209 N.W.2d 203 (1973) (same); *Neibling* v. *Terry*, 352 Mo. 396, 398–400, 177 S.W.2d 502 (1944) (same); *Nebraska State Bar Assn.* v. *Mathew*, 169 Neb. 194, 197, 98 N.W.2d 865 (1959) (same); *Kravis* v. *Hock*, 136 N.J.L. 161, 165–66, 54 A.2d 778 (1947) (revocation of liquor license); *People* v. *Daiboch*, 265 N.Y. 125, 129, 191 N.E. 859 (1934) (second offender status); *In re Bosch*, 175 N.W.2d 11, 14 (N.D. 1970) (suspension from practice of law); *Lee* v. *Wisconsin State Board of Dental Examiners*, 29 Wis. 2d 330, 335, 139 N.W.2d 61 (1966) (license to practice dentistry).

This case writes a new chapter in the history of the rights of victims of crime. The town, a victim in this case, is required to keep in its employment a worker convicted of stealing from that town. All this after the victim town provided in its personnel rules that a conviction of such an offense would justify firing that employee. The majority's concern for the employee entering a plea of nolo contendere because he relied on his attorney and saved the expense of going to trial, and perhaps to jail, is touching. Such sympathy, I believe, is not in keeping with this state's announced policy of concern for victim's rights. See Conn. Const., amend. XXIX (b) (providing victims of crimes with rights). I believe that no employer, least of all a town, should be forced to retain an employee who has been convicted in a court of law of stealing from that town. I accordingly dissent.

BORDEN, J., dissenting. I disagree with the majority that the arbitral award in this case did not violate public policy. Applying the appropriate scope of review, upon which I agree with the majority, I conclude that, based upon the undisputed facts of the case, the award violated the clear public policy against embezzlement. In

my view, that policy includes the policy that an employer should not be required to reinstate the employment of an employee who has been convicted of embezzlement of his employer's funds, whether that conviction follows a trial, a guilty plea, or a plea of nolo contendere. I therefore dissent.

I agree with the arbitrator, and neither the defendant union, United Steelworkers of America, nor the majority disputes, that if the employee's conviction for embezzlement of his employer's funds had followed either a guilty plea or a trial, the plaintiff employer, the town of Groton, would have been justified in imposing appropriate discipline, including termination, and an arbitral award requiring his reinstatement to employment would have violated clear public policy.[1] See, e.g., *Board of Education* v. *Local 566, Council 4, AFSCME*, 43 Conn. App. 499, 501, 683 A.2d 1036 (1996), cert. denied, 239 Conn. 957, 688 A.2d 327 (1997) (where grievant had pleaded guilty to and been convicted of fraudulently diverting union funds, award reinstating him to job with responsibility for publicly owned property violated public policy); see also *State* v. *Council 4, AFSCME*, 27 Conn. App. 635, 641, 608 A.2d 718 (1992) (where grievant admittedly had misused state funds by cashing falsely generated public assistance checks, award of reinstatement to employment violated public policy). In either instance, the record would be sufficient to

---

[1] I emphasize that I would not hold that, in imposing discipline on an employee who has been established to have embezzled his employer's funds, the employer is required by law to terminate the employee. The degree of discipline that the employer imposes is, in the first instance, up to the employer, subject to those standards set forth in the applicable personnel rules, collective bargaining agreement, and any other relevant materials. Indeed, in *Board of Education* v. *Local 566, Council 4, AFSCME*, 43 Conn. App. 499, 501, 683 A.2d 1036 (1996), cert. denied, 239 Conn. 957, 688 A.2d 327 (1997), in which the employee had pleaded guilty to stealing union funds, the discipline imposed was not termination but demotion to a lesser position. The arbitral award that was held to violate public policy was to reinstate him to his prior position. Id., 504.

establish that the employee had in fact stolen from his employer. The guilty plea would constitute an admission of guilt; see *Lawrence* v. *Kozlowski*, 171 Conn. 705, 711 n.4, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977); and the conviction after trial would be sufficient to establish the fact of the theft, under established principles of issue preclusion. See *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296–307, 596 A.2d 414 (1991). In either of those instances, the public policy against theft also would include the policy that an employer should not be required to retain in a position of financial trust an employee who has been established to have stolen.

The question posed by this appeal is whether that calculus is altered by the fact that the conviction is based, not upon a plea of guilty or a trial, but upon a plea of nolo contendere. I conclude that an arbitral award that requires the employer to reinstate an employee who has been terminated following his conviction, upon the basis of such a plea, of embezzling the employer's funds, violates public policy.

I agree with the plaintiff that the public policy against embezzlement encompasses the policy that an employer should not be compelled to reinstate an employee who has been convicted of embezzling the employer's funds, irrespective of whether the conviction followed a trial, a guilty plea or a nolo contendere plea.[2] The employment context ordinarily involves a number of legitimate expectations on the part of the

---

[2] I acknowledge that there may be circumstances attending such a plea that are so extreme that a conviction based upon it should be given no credence whatsoever for purposes of an employment discipline decision. Suffice it to say that, although in the present case the circumstances attending the employee's plea generate understanding of his dilemma in deciding whether to plead nolo contendere or go to trial, they are not so extreme as to require that his conviction be wholly disregarded in the subsequent employment discipline decision.

employer that such a conviction is likely to undermine, irrespective of the legal underpinning of the conviction. For example, the employer is entitled to expect that he be able to trust any employee who is in a position of financial responsibility. The employer is also entitled to expect that his other employees will be able to trust their coemployees, and that those other employees will feel sufficiently deterred from engaging in embezzlement. Finally, the employer is entitled to expect that members of the public who are required to deal with his employees will feel that they are being served in an honest and trustworthy manner. All of these legitimate expectations are severely threatened by a requirement that the employer reinstate an employee who has been convicted of embezzling the employer's funds. That severe threat, moreover, is not removed or significantly ameliorated by the fact that the conviction rests upon a plea of nolo contendere, as opposed to a plea of guilty or a trial.

Although we have stated in the context of litigation and administrative rulings that a prior conviction based upon a nolo contendere plea may have no currency beyond the case in which it was rendered; *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711–12 n.4; such a conviction does have the weight of a final adjudication of guilt and does share at least some characteristics of a guilty plea. "A plea of nolo contendere has the same legal effect as a plea of guilty on all further proceedings within the indictment. *North Carolina* v. *Alford*, 400 U.S. 25, 35–36 n.8, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Lawrence* v. *Kozlowski*, [supra, 705]; see *State* v. *Godek*, 182 Conn. 353, 363–64, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981). The only practical difference is that the plea of nolo contendere may not be used against the defendant as an admission in a subsequent criminal or civil case. 4 Wigmore, Evidence (Chadbourn Rev. 1972) § 1066 (2),

p. 81; Lenvin & Meyers, 'Nolo Contendere: Its Nature and Implications,' 51 Yale L.J. 1255 (1942). *State* v. *Martin*, 197 Conn. 17, 20–21 n.7, 495 A.2d 1028 (1985). It is clear, however, that a nolo contendere plea also constitutes a waiver of all nonjurisdictional defects in a manner equivalent to a guilty plea. *Lott* v. *United States*, 367 U.S. 421, 81 S. Ct. 1563, 6 L. Ed. 2d 940 (1961); *United States* v. *DePoli*, 628 F.2d 779, 781 (2d Cir. 1980).'' (Internal quotation marks omitted.) *State* v. *Madera*, 198 Conn. 92, 97 n.5, 503 A.2d 136 (1985). Thus, it is simply too much to expect of the employer that it be required to set aside its legitimate expectations, solely because of the differences, which the law recognizes in contexts other than that of employment, between a conviction based upon a guilty plea or trial and a conviction based upon a nolo contendere plea.

*Lawrence* v. *Kozlowski*, supra, 171 Conn. 705, upon which the defendant and the majority rely, does not require a different conclusion. In *Lawrence*, the plaintiff challenged, by way of an appeal under the Uniform Administrative Procedure Act, the suspension of his driver's license by the defendant commissioner, who had admitted into evidence at the administrative hearing a certified record of the plaintiff's prior plea of nolo contendere to and ensuing conviction of negligent homicide. Id., 710. In concluding that the commissioner should not have admitted that record, we reiterated that "in a judicial proceeding the plaintiff's nolo contendere plea and arrest would be inadmissible. Furthermore, despite the broad latitude given the commissioner with respect to the admission of evidence, we are also of the opinion that the nolo contendere plea should have been excluded from the administrative hearing as well, not only because it was of marginal probative value, but also because such pleas are often entered with the expectation that they will not be used against an accused in subsequent proceedings. See McCormick,

[supra] § 265." *Lawrence* v. *Kozlowski*, supra, 711–12. In an explanatory footnote regarding the differences between a guilty plea and a nolo contendere plea, with respect to the latter, we stated: "Nor is it admissible . . . as res judicata establishing that the plaintiff was engaged in a criminal act." Id., 711 n.4. For this proposition, we cited *Krowka* v. *Colt Patent Fire Arm Mfg. Co.*, 125 Conn. 705, 714, 8 A.2d 5 (1939), in which, in the context of an action for damages, we had held that the record of a prior police court conviction of the plaintiff for breach of peace, based upon a nolo contendere plea, "was not admissible as res judicata."

As these authorities state, under our law a prior plea of nolo contendere and a conviction based thereon may not be admitted into evidence in a subsequent civil action or administrative proceeding to establish either an admission of guilt or the fact of criminal conduct.[3] Civil actions and administrative proceedings, however, ordinarily do not involve the kind of legitimate expectations of the employer that are inherent in the employment context and that would be severely undermined by requiring the reinstatement of an employee convicted of embezzling his employer's funds. The absence of these considerations in the ordinary civil or administrative context, and the compelling nature of their presence in the employment context, differentiate these authorities from the present case.

I would, therefore, affirm the judgment of the trial court.

---

[3] As the plaintiff suggests, however, this is not the universally held view. See, e.g., *Sokoloff* v. *Saxbe*, 501 F.2d 571, 574–75 (2d Cir. 1974), in which the court sustained the revocation of a physician's license pursuant to a federal statute providing for such revocation upon the conviction of a drug related felony, where the physician had been convicted of such a felony upon the basis of his nolo contendere plea. The court stated that "[w]here . . . a statute (or judicial rule) attaches legal consequences to the fact of a conviction, the majority of courts have held that there is no valid distinction between a conviction upon a plea of nolo contendere and a conviction after a guilty plea or trial." Id., 574.