[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. BACKGROUND
This is a labor arbitration case concerning an arbitration award dated February 1, 2000 by a three-member panel of the State Board of Mediation and Arbitration. The Town seeks to have the award vacated pursuant to General Statute Section 52-418 and the Grievant seeks to have the award affirmed pursuant to General Statute Section 52-417.
II. FACTS
The Grievant, John Mazzarella is thirty-nine years of age and has been an employee of the Town of East Hartford Public Works Department since January 5, 1986. He was employed as a brick mason.
The arbitrators found that Mr. Mazzarella suffered from a severe CT Page 6555 hearing loss from birth and consequent mental retardation.
While employed by the Town the Grievant received numerous warnings, suspensions and reprimands for abusing sick leave, being insubordinate to superiors, damaging town owned property and physically assaulting a supervisor for whom he worked on June 15, 1998. As a result of that assault the Grievant received a suspension of five days without pay which he did not grieve or appeal. Conversely, according to a thirty-year supervisory employee of the Town, the Grievant was "a hard-working guy who never dogged it when there was work to be done. He knew what he was doing and always was eager to get the job done. . . . If I had mason work to be done at my home I would hire him in a minute."
On January 5, 1999, Mr. Mazzarella was involved in an altercation at a small strip center where he had been sent by his supervisor to pick up pizza for lunch for a crew of workmen. He drove a Town truck towing a trailer with a generator on board to the location. As he was backing the truck into a parking lot at the strip center, a woman operating a small van arrived at the entrance to the parking area. There is no question that Mazzarella yelled at the van driver and waved his arms. It is not disputed that he used profanity. The Town claims that he used threatening gestures toward the woman and put her in fear that she or her grandchildren who accompanied her would be physically assaulted by him. The woman called the East Hartford Police Department who responded to the incident. She recounted the incident to the police department but refused to sign a statement because she claimed to be afraid of retaliation from the Grievant.
On January 14, 1999, the Director of Public Works informed the Grievant by letter that he was suspended without pay for five days. The letter further stated:
 "I have received and confirmed through independent sources that you were involved in an incident on the above date at 1084 Burnside Avenue..... Your behavior put the lady and her grandchildren in fear for their safety and caused great offense to them. I have explained to you before this kind of behavior simply cannot be tolerated.
 As a result of your conduct on January 5, 1999 you are hereby suspended from work without pay for five days.
 You should be aware that, as a result of your conduct, I am considering further disciplinary action, up to and including termination against you....." CT Page 6556
On January 25, 1999, the Director of Public Works informed the Grievant by letter that he was dismissed from his position as a mason in the Public Works Department effective January 25, 1999. As a result of that dismissal this arbitration ensued.
III. THE ARBITRATION FINDING
Contained in the twenty-four page opinion issued by the arbitrators are the following findings:
 1. "Record evidence not disputed by the Town demonstrates that the Grievant has both a hearing disability and some level of mental retardation."
 2. "We also find that the Town did not fully meet its obligation to accommodate and to very methodically and specifically address the grievant's disabilities and make a plan to see if accommodations would secure a viable work environment."
 3. The arbitrators took into account "Two competing public policies that have been identified by the circumstances of this termination."
 4. The arbitrators found "We do not find that the Town's investigation resulted in a substantial finding of proof that the behavior was violent and threatening due to the existence of the Grievant's disabilities. We find that the Town has not acted sufficiently to accommodate him. We do not find that he violated the violence policy."
 5. "[W]e find that the Town should return the Grievant to work in conjunction with a plan which is forthwith developed as a result of an interactive process, i.e. their (the Town and the Grievant) joint application to the Bureau of Rehabilitated Services of the State Department of Social Services for immediate evaluation of the Grievant's job situation.
 This is a route that we know is available to the Parties, although other similar interactive process is appropriate."
 6. "Since we find after a review of the disciplinary CT Page 6557 record that the Grievant to some degree has been unwilling to cooperate with the Town's directives — his disabilities notwithstanding — we do not find the Town to be fully responsible for the resulting environment."
 7. "We therefore find that the termination should be reduced to a thirty-day suspension and the Grievant should be made whole for the remaining loss of wages. . . ."
Finally the panel concluded with the award which read as follows:
 "AWARD
The grievance is sustained in part and denied in part.
John Mazzarella was not terminated from employment by the Town of East Hartford for just cause.
His termination shall be converted to a thirty-day suspension. He shall be made whole within a reasonable time of receipt of this award for his loss of pay, not involving overtime, less unemployment or other basic compensation received during the period of his termination. All of his contractual rights affected by the termination shall be restored as discussed, supra.
The Town and the Grievant shall forthwith take action in accordance with the discussion and analysis on the terms set forth therein."
DISCUSSION
It is clear to the court that the dispute before it concerns a question of whether the arbitration violates a legitimate public policy.
Recently the Supreme Court has held:
 "If, on the other hand, it has been determined that an arbitral award does implicate a clearly established public policy, the ultimate question remains as to whether the award itself comports with that policy. We conclude that where a party challenges a consensual arbitral award on the ground that it violates public policy, and where the challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award CT Page 6558 does in fact violate public policy"
Schoonmaker v. Cummings Lockwood of Connecticut, P.C., 252 Conn. 416,429 (2000).
In the instant case, the arbitrators clearly recognize a defined and legitimate public policy against workplace violence. The arbitrators also clearly recognize a public policy concerning persons with disability which is embodied in the Americans with Disabilities Act,42 U.S.C. § 12113. The arbitrators appear to have attempted to balance a recognized policy against work place violence against a recognized policy of accommodation of disabilities. As a consequence of this balance they state: "We do not find that he violated the violence policy." In this regard the court notes that the Supreme Court has recently held:
 "On review of an arbitration award, even on a claim of a public policy violation, neither the trial court nor this court has authority to make findings of fact that arbitrators did not make. [citations omitted]
Groton v. United Steel Workers of America, 252 Conn. 508, 523 (2000).
Similarly, in Schoonmaker, supra the court wrote:
 "By no means should our decision be viewed as a retreat of even one step from our position favoring arbitration as a preferred method of dispute resolution. Unlike the suggestion in the concurrence of Justice Peters, our faith in and reliance on the arbitration process remains undiminished, and we adhere to the longstanding principle that findings of fact are ordinarily left undisturbed upon judicial review."
Schoonmaker at 432.
This court is faced with a finding that Mr. Mazzarella did not violate the work place violence policy. While it is relatively clear that the arbitrators do not disbelieve that some sort of improper activity took place because they imposed a thirty day suspension, they appear to have balanced disability considerations against the actions which they believe occurred.
De novo review of legitimate public policy challenges has been the clearly articulated law of the State of Connecticut only sinceSchoonmaker on March 28, 2000. It is not entirely clear to this court from a careful reading of Schoonmaker and Groton v. United Steel Workers
CT Page 6559 whether the balancing of public policies done by the arbitrators in this case is within the court's de novo review or is a finding of fact entitled to deference. However, since the court has no finding by the arbitrators that Mr. Mazzarella violated the work place violence policy the court sees no basis for overturning the award of the arbitrators on the grounds that the award is a violation of policy against workplace violence.
The court finds that the arbitrators did rely on an article entitled "ADD: ATTENTION DEFICIT DISORDER OR AN ARBITRATOR'S DISCIPLINARY DILEMMA by Robert Herzog." This article was not introduced into evidence and the Town objected and continues to object to the arbitrator's reliance on it.
The court recognizes that the Appellate Court has ruled that a panel could not rely on the Department of Public Safety Administration and Operations manual which was not introduced into evidence. Wallingford v.Wallingford Police Union Local 1570, 45 Conn. App. 432, 439-440 (1997). Similarly, the Supreme Court has held that the ex parte receipt of evidence on a material fact without notice to the parties warranted vacating an award. OG/O'Connell Joint Venture v. Chase Family LimitedPartnership III, 203 Conn. 133, 147 (1987).
Notwithstanding these authorities, it appears to the court that the study relied upon by this arbitration panel was not relied upon as evidence but rather as a methodology to approach the problem. This court is not prepared to hold that arbitrators may not rely upon any treatises or articles unless they are introduced into evidence.
Finally, Connecticut General Statutes Section 52-418 (a)(4) provides that the award shall be vacated if it is not mutual, final, and definite. The Appellate Court has held:
 "[A]n award must be final as to matters submitted so that the rights and obligations of the parties may be definitively fixed."
State v. AFSCME Council 4 Local 1565, 49 Conn. App. 33, 36 (1998). Aff'd.249 Conn. 474 (1999).
In State v. AFSCME Council 4 a female corrections officer grieved her discharge on the grounds of unauthorized absence from work claiming that the absences were caused by sexual harassment on the job. The corrections officer was employed at the Northeastern Community Correctional Center at Storrs. The arbitrator issued an award which stated:
 "There was not just cause for the dismissal of the CT Page 6560 Grievant. The Grievant shall be reinstated to a position at Niantic [Correctional Center] or another facility agreeable to the Grievant and to the union." Council 4 at 35.
The court went on to write:
 "The language of the award orders the Grievant to be placed at either Niantic or an alternative facility that will be agreeable to all parties. Because the award does not specify an exact location for placement, it is indefinite. . . . Once again, because placement has yet to be determined, further litigation continues to be a possibility, and, thus, the award cannot be said to fix definitely the rights and obligations of the parties." Council 4 at 37.
Similarly in this case, the arbitrators, after recommending a joint application to the Bureau of Rehabilitation Services of the State Department of Social Services wrote: "This is a route that we know is available to the parties, although any other similarly interactive process is appropriate."
The court finds that that portion of the award recommending application to the Bureau of Rehabilitation Services or a similar interactive process is not final.
Relying on the analysis contained in State v. AFSCME Council 4 the court has the power to remand the matter to the arbitrators so that they may enter a final award. A reasonable time includes the time necessary for an appeal to court and therefore the time within which an award is required has not yet expired. A rehearing of this matter by the arbitrators would not require the taking of additional evidence.
However, unlike the facts in State v. AFSCME Council 4 where the reinstatement was conditioned upon a transfer, it appears to the court that the arbitrators intended reinstatement following a thirty-day suspension. It does not appear that the refusal to terminate was dependent on the recommendation for an interactive process of referral.
Accordingly, while the court recognizes its discretion to remand the matter to the arbitrators for rehearing, the court sees no need to do so.
The court does not disagree with the conclusion of the arbitrators when they stated:
 "We find that responsible and lawful follow-through would have been for both the Town and the Grievant to participate in a well thought out plan to address the alleged and documented pattern of disruption in conjunction with a plan to act to determine if certain accommodations to address the Grievant's disabilities were necessary to that plan."
While such accommodation may be appropriate, the arbitrators' direction to the Town and the Grievant to engage in such a course of conduct is not sufficiently "mutual, final and definite" to be within the authority of the arbitrators to order
The court vacates so much of the arbitrators' award as directs that "the Town and the Grievant shall forthwith take action in accordance with the discussion and analysis on the terms set forth herein."
The court confirms the arbitrators' award and all other respects.
 THE COURT By ____________________, J. Kevin E. Booth
CT Page 6561