[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The applicant Metropolitan District Commission ("MDC") has applied pursuant to §§ 52-418 and 52-420 of the General Statutes for an order vacating an arbitration award which ordered reinstatement of the employee Wylie Watkins. The MDC had terminated Watkins' employment following an investigation into an incident in which Watkins aided the illicit use of the MDC's waste processing facility. The facts, as found by the arbitrators, are as follows.
The waste processing facility, operated in cooperation with the Connecticut Resources Recovery Authority, was at the time of the incident in question, October 18, 1998, closed on Sundays but several MDC were present to feed the power plant, guard against fire and complete paperwork. The facility was closed to truck entry, which ordinarily required a permit and prior weighing in. Contrary to known protocol, an unauthorized truck, driven by an off-duty co-employee, was allowed to enter and to dump contents at least four times. The truck was not weighed and did not have a permit. The driver of the truck presumably did not pay required fees. Watkins saw the unlawful dumping and, at the direction of his supervisor, used a payloader to move the dumped materials. These facts were admitted to the MDC during its investigation. He testified at the grievance hearing, but did not previously disclose the information, that he saw his supervisor speak with the co-employee truck driver. He did not report the activities immediately because he did not want to be implicated in what he knew to be unauthorized activity.
The arbitrators found that Watkins was a "knowing and active participant in the dumping activities," but also found some ambiguity in the situation because he was complying with his supervisor's orders and would naturally, though not correctly, be reluctant to inform on coworkers.
The majority of the arbitration panel found that discipline was appropriate in the context, but held that the decision to terminate CT Page 1694 Watkins was "too harsh," because his offense was not following protocol and not reporting the incident. The majority substituted a five-day unpaid suspension, which was the maximum discipline permitted in the collective bargaining agreement short of termination.
In its application to vacate the award, the MDC relies on the "public policy exception" to the rule requiring that arbitration awards within the scope of the submission be enforced by the courts. The exception has been the subject of a considerable body of case law in recent years; see, e.g., State v. AFSCME, 257 Conn. 80 (2001); South Windsor v. Police UnionLocal 1480, 255 Conn. 800 (2001); Groton v. United Steelworkers ofAmerica, 252 Conn. 508 (2000); and the by-now black letter law need not be repeated at length here. Suffice it to say that the exception is to be applied narrowly and the courts are to engage in de novo judicial review only in situations where there is an articulated colorable violation of clearly defined public policy.
In light of the clearly expressed policy against embezzlement and dishonesty; see, e.g., Groton v. United Steelworkers, supra (finding of violation of public policy regarding embezzlement reversed on evidential ground; existence of strong public policy affirmed); Board of Educationv. Local 566, 43 Conn. App. 499 (1996) (violation of strong public policy for one convicted of embezzlement from employer to be reinstated); I find that de novo review is appropriate. I consider, then, consistent with the authority cited above, whether there is an explicit, well-defined and dominant public policy involved and, if so, whether the arbitrators' award conflicts with that policy.
The answer to the first question is affirmative. Although the MDC in its brief points to the policy of the state to "conserve, improve and protect its natural resources and environment and to enhance the health, safety and welfare of the people of the state," as expressed in § 22a-1
of the General Statutes, this is the sort of vague, though certainly strong, policy that has not generally passed muster as a specific policy sufficient to trigger the public policy exception. See, e.g., Town ofSouth Windsor v. Police Union Local 1480, supra. Insofar as the application to vacate implicates Watkins' involvement in illegal dumping and aiding in embezzlement, however, clear and explicit public policies are implicated.
The second issue is whether the award conflicts with the policy. On the very narrow facts of this case, I find that the award is not in such clear conflict that the award should be vacated, given the narrow scope of the public policy exception. In this case, Watkins was not a beneficiary of any embezzlement nor was he an active participant in any CT Page 1695 scheme. Indeed, he followed the orders of his supervisor in moving the dumped materials with heavy equipment: one perhaps should note that there is authority for the proposition that one can be terminated for failure to follow the orders of superiors even where arguably one would be ignoring the law by following the orders. See Watertown Police UnionLocal 541 v. Watertown, 210 Conn. 333 (1989). Although one should be wary of excuses such as stressors which are advanced to mitigate the consequences of inappropriate behavior; see, e.g., State v. Council 4,AFSCME, 27 Conn. App. 635 (1992); I find that in this case the arbitrators did not clearly act in violation of public policy in recognizing the limited role of Watkins in the overall picture and in recognizing the position he was placed in by his superiors. The award in fact recognized that there is a public policy against validating the conduct of Watkins, and not insignificant discipline was imposed, yet the arbitrators did not think that the public policy would be threatened by reinstating Watkins in the circumstances of this case. The fundamental question before me is whether enforcement of the award would, in the circumstances presented, offend an important public policy of the state and in these circumstances I find that it would not. The application to vacate the award is denied.
Beach, J. CT Page 1696