FORGE SQUARE ASSOCIATES LIMITED PARTNERSHIP
*v.* CONSTRUCTION SERVICES OF BRISTOL, INC., ET AL.
(12127)

O'CONNELL, FOTI and CRETELLA, Js.

Argued October 28, 1993—decision released March 8, 1994

*Louis R. Pepe,* with whom, on the brief, was *Linda J. Cannata,* for the appellant (plaintiff).

*Raymond A. Garcia,* with whom were *Jane I. Milas* and, on the brief, *Gregory R. Faulkner,* for the appellees (defendants).

O'CONNELL, J. The plaintiff appeals from the trial court's denial of its application to vacate an arbitration award pursuant to General Statutes § 52-418 (a) (4).[1] The dispositive issue is whether the trial court improp-

---

[1] General Statutes § 52-418 (a) (4) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

erly refused to vacate an award in an unrestricted submission because of the arbitrators' alleged manifest disregard of applicable law. We affirm the judgment of the trial court.

The relevant facts are as follows. In 1987, the plaintiff, Forge Square Associates Limited Partnership (Forge Square), contracted with the defendant Construction Services of Bristol, Inc. (CSB), to convert an old forge building in Middletown into eighty-one residential rental units. Shortly after CSB commenced work on the project, a series of problems arose. These problems, the causes of which were vigorously disputed by the parties, resulted in the project's completion date being pushed back considerably beyond the original deadline. Believing that blame for the problems and corresponding delays rested with CSB, Forge Square sought to discharge CSB. Toward this end and pursuant to § 2.2.9 of the contract,[2] Forge Square referred the matter to the architect who, after an investigation, certified that sufficient cause existed for Forge Square to terminate CSB's contract. On the basis of this certification, Forge Square terminated the employment of CSB. CSB responded by filing a timely demand for arbitration,[3] seeking damages for each of the following:

---

[2] Section 2.2.9 of the contract states: "Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred initially to the Architect for decision which he will render in writing within a reasonable time."

[3] CSB filed for arbitration pursuant to § 7.9.1 under the General Conditions of the contract, which provides: "All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, except as provided in Subparagraph 2.2.11 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.9.4 and 9.9.5, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise."

breach of contract; failure to issue change orders; failure to make timely payment; and wrongful termination of contract.[4] Forge Square filed an answer and counterclaim, also seeking damages for breach of contract.

After extensive hearings,[5] the arbitration panel[6] awarded $617,740 to CSB on its claim and $278,069 to Forge Square on its counterclaim. Forge Square then filed an application to vacate the award under § 52-418 (a) (4)[7] on the ground that "the arbitrators had manifestly disregarded the governing law in Connecticut with respect to the binding effect of the architect's certification on termination." CSB countered by filing a motion to confirm the arbitration award. After the submission of briefs and oral argument, the trial court denied Forge Square's motion to vacate and confirmed the award. This appeal followed.

The parties agree that the trial court's scope of review of an arbitration award under § 52-418 (a) (4) is governed by *Garrity* v. *McCaskey,* 223 Conn. 1, 612 A.2d 742 (1992). In *Garrity,* our Supreme Court held that a trial court should vacate an arbitrator's award under § 52-418 (a) (4) where "the award reflects an egregious or patently irrational rejection of clearly controlling legal priniciples." Id., 11. The court will generally examine whether the award conforms to the submission; it will not review an arbitrator's decision in an unrestricted submission merely for errors of law,

---

[4] The defendant Seaboard Surety Company joined in and agreed to be bound by the arbitration.

[5] The arbitration consisted of fifty-one days of hearings, which included 619 exhibits entered into evidence, approximately 9000 pages of transcript, a visit to the construction site by the arbitrators and counsel, four hours of oral argument and, finally, a separate question and answer session called by the panel at the conclusion of the fifty-one days of hearings.

[6] The three arbitrators were John C. Travis, Jr., Esq., Robert C. Canning and John Scholsky.

[7] See footnote 1.

errors in the application of the law to the facts or the relative merits of an unsatisfied party's claim. Id., 10–13.

Forge Square argues that the architect's certification stating that it had sufficient cause to terminate the contract with CSB was final and binding on the arbitrators, absent proof that the architect's decision was the product of fraud, bad faith, or gross misconduct. Because there was no showing of fraud, bad faith or gross misconduct, Forge Square claims that the arbitrators' award in favor of the defendant ignored the architect's decision regarding termination "in manifest disregard of the law." Id., 10.

CSB claims that under the terms of the contract the architect's decision on claims or disputes between the parties became final and binding on the arbitrators under only a limited number of situations, none of which are applicable here.[8] Because the decision of the architect was not final, CSB contends that the arbitrators' award in its favor, despite the architect's conclusion otherwise, reflects a result consistent with vigorously contested issues regarding the cause of the delays, contract interpretation and the applicability of the law to the facts.

---

[8] Under § 2.2.11 of the parties' contract the "[a]rchitect's decision in matters relating to artistic effect will be final if consistent with the intent of the Contract Documents."

Similarly, § 2.2.12 of the contract between the parties states in relevant part: "Any claim, dispute or other matter in question between the Contractor and the Owner referred to the Architect . . . shall be subject to arbitration upon the written demand of either party. . . . When such a written decision of the Architect states (1) that such a written decision is final but subject to appeal, and (2) that any demand for arbitration of a claim, dispute or other matter covered by such decision must be made within thirty days after the date on which the party making the demand receives the written decision, failure to demand arbitration within the said thirty days' period will result in the Architect's decision becoming final and binding upon the owner and the Contractor."

The parties submitted comprehensive briefs and engaged in robust oral argument in support of their respective claims on appeal. We have carefully reviewed the briefs and oral argument as well as the entire record and are satisfied that the judgment of the trial court should be affirmed. We have also reviewed the trial court's memorandum of decision. *Forge Square Associates Ltd. Partnership* v. *Construction Services of Bristol, Inc.,* 43 Conn. Sup. 32, 638 A.2d 653 (1994). In that decision, the trial court determined that the arbitrators' award did not represent an "egregious or patently irrational rejection of clearly controlling legal principles." See *Garrity* v. *McCaskey,* supra, 11–12.

The trial court's memorandum of decision is an accurate statement of the Connecticut law governing in this action. Little would be accomplished by our recitation of what the trial court, through its diligent efforts, has already ably furnished. Accordingly, we adopt the trial court's well reasoned decision as a statement of the facts and the applicable law in this case. See *Daw's Critical Care Registry, Inc.* v. *Department of Labor,* 225 Conn. 99, 102, 622 A.2d 518 (1993); see, e.g., *Loeb* v. *Al-Mor Corp.,* 224 Conn. 6, 7, 615 A.2d 149 (1992); *State* v. *Mobley,* 33 Conn. App. 103, 105, 633 A.2d 726, cert. denied, 228 Conn. 917, 636 A.2d 849 (1993); *LaValley* v. *Correia,* 33 Conn. App. 41, 43, 632 A.2d 1143 (1993).

The judgment is affirmed.

In this opinion the other judges concurred.