[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Wayne Construction Corp. ("Wayne"), a New York corporation with a principal place of business in Scarsdale, New York, filed the present application to confirm an arbitral award in its favor, pursuant to §52-417 of the General Statutes.[1] Regional School District No. 9 (the "District"), a public school district with authority and control over the operation of public schools within Region District No. 9 of Redding/Easton, Connecticut, filed the present cross-application to CT Page 5776 vacate the award, pursuant to § 52-418 (a)(4).[2]
The arbitration panel could reasonably have found the following facts. On September 24, 1993, the District and Wayne entered into a contract for renovation and building code update work (project) at the Joel Barlow High School in Redding, which was owned and operated by the District. The parties, termed as "Owner" and "Contractor," respectively, in the contract, adopted verbatim the standard boilerplate contract entitled, "General Conditions of the Contract for Construction" (standard agreement), prepared and printed by the American Institute of Architects (AIA Document A201, 1987 Ed.), as their main contract, supplemented by a "Standard Form of Agreement Between Owner and Contractor" (AIA Document A101, 1987 Ed.), which filled out information specific to the parties and their contract, and a typewritten "Supplementary General Conditions" (supplementary agreement), dated April 1, 1993. The three documents "represent the entire and integrated agreement between the parties." (AIA Document A101, arts. 1 9.) The District retained Kaestle Boos Associates, Inc. (hereinafter the "architect"), which acted as its representative, inspector and liaison with Wayne during construction. The architect also had the authority to determine whether the project performed by Wayne was satisfactory under the terms of the contract and whether the project met the terms of "substantial completion" and "final completion" as defined in the contract. Under the contract, the project was to be "substantially complete" within 365 days from September 23, 1993, with an additional thirty days for the "final completion."
The standard agreement contains a broad arbitration clause. Subparagraph 4.5.1 provides, in pertinent part:
 Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. . . . Such controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to arbitration upon written demand of either party. Arbitration may be commenced when 45 days have passed after a Claim has been referred to the Architect as provided in Paragraph 4.3 and no decision has been rendered.
CT Page 5777
The work was overseen on behalf of District by a school building committee ("committee"), chaired by Michael S. Cardillo. Wayne alleged that from the outset, the committee, especially Cardillo, continually disrupted its work, egregiously interfered with its rights under the contract, and usurped the authority of the architect to administer the contract. The District's architect informed Wayne, via certified mail, dated October 14, 1994, in response to Wayne's revised application for payment number 10, that Wayne had failed to meet "substantial completion" in accordance with all contract requirements. Wayne claimed that the District unilaterally adjusted and reduced the balance due under the revised application for payment number 10. On November 23, 1994, the parties terminated the contract and the District declared a contractor default. The District subsequently made demands on Wayne's surety Hartford Fire Insurance Company ("Hartford"), to complete a "punch list" of the project under the performance bond, that is, what needed to be done in order to achieve the "final completion" of the project.
On March 8, 1995, the District and Hartford entered into a completion agreement of the "punch list." The completion agreement expressly provided that neither Wayne nor the District acknowledged liability for breach of contract damages and that the agreement was made solely for the purpose of mitigating damages. Hartford and Wayne signed a settlement agreement on September 15, 1997, which resolved the issues of Wayne's liability to Hartford, under the performance bond, for the expenses of completing the project and consequential damages from Wayne's inability, allegedly due to the District's failure to pay a balance due under the revised application for payment number 10, to satisfy claims by Wayne's subcontractors and labor and material suppliers. Pursuant to the settlement agreement, Hartford also irrevocably assigned, conveyed and transferred to Wayne all of its rights to seek reimbursement or indemnification from the District.
On November 3, 1997, Wayne filed a demand for arbitration of its claim arising out of the contract with the American Arbitration Association (AAA), seeking recovery of damages, among others, from the alleged unpaid balance due for the work performed, home office and project delay damages, extra costs for the additional work, costs and expenses charged by its surety Hartford, damages to its reputation and lost profits and damages for impairment of its bonding capacity. The District filed a "preliminary answering statement," dated November 17, 1997, denying Wayne's arbitration claims and asserting a counterclaim for "professional fees and expenses, and extra costs in dealing with [Wayne's] breach of contract and the subsequent effort to complete the building project." The District also asserted therein the special defense that the arbitration demand and claim for relief were untimely CT Page 5778 and barred under the terms of the contract. The District filed a "supplemental answering statement and counterclaim," dated December 1, 1997, substantiating its special defense of the untimeliness of Wayne's arbitration defense and its counterclaim. The District and Wayne mutually agreed upon a panel of three arbitrators, recognized as experts in their respective fields of construction law, contracting and engineering.
On March 27, 1998, the District filed a motion to dismiss Wayne's arbitration demand as untimely. In its motion, the District argued that the architect had exclusive and final authority to determine any of Wayne's claims pursuant to paragraph 4.3.2 of the supplementary agreement.[3] In addition, the District argued that Wayne failed to file its arbitration demand in a timely manner under the terms of the contract. On April 17, 1998, the arbitrators denied the District's motion to dismiss.
On October 22, 1998, the District filed a request to bifurcate the hearing. It requested that the arbitrators structure the hearing in such a manner so that it could be allowed to put on evidence of its defense before Wayne had the opportunity to put on its case-in-chief. It claimed that a decision in its favor could preliminarily dispose of the entire case on any of the following three main defenses: (1) whether the architect acted in good faith when it failed to certify substantial completion of the work; (2) whether Wayne filed its claim for arbitration in a timely manner; and (3) whether Wayne's claims for delay damages were barred by the terms of the contract. On November 4, 1998, Wayne filed an objection to the District's request, arguing that not only was the motion procedurally improper, but that the arguments raised by the District were merely a rehash of the arguments raised in its previously denied motion to dismiss, and that its arguments were wrong on the merits in any event. The arbitrators denied the District's motion to bifurcate the hearing.
On October 16, 1999, the District filed a motion for articulation of the award, requesting the arbitrators to issue a formal memorandum of decision for its eventual award, wherein it reiterated its arguments raised in the motions to dismiss and to bifurcate. The arbitrators deferred their decision on the motion until the time of the rendering of its final decision on the parties' claims and counterclaims.
The parties each filed a post-hearing brief, rebuttal memorandum and reply brief in October, 1999. On November 17, 1999, following some sixteen hearing days and after considering volumes of testimony of many witnesses, the arbitrators issued a written award, granting Wayne $498,992 in damages and $249,496 in interest, plus $1,500 to be paid to CT Page 5779 Wayne for the District's share of the administration fees and expenses advanced to the AAA by Wayne, in full and final resolution of all claims submitted to arbitration. Although the arbitrators, acting within their discretion, declined the District's invitation to issue a formal memorandum of decision to accompany its written award, they broke down the award pursuant to damage categories.
In reviewing an arbitral award, the court balances a public policy in favor of arbitration as an alternative means of settling private disputes and the judicial role in protecting the fundamental contractual principles regarding whether the parties have contractually agreed to submit their disputes to arbitration and the scope of the submission to arbitration,
On the one hand, courts have embraced an emphatic public policy that favors arbitration as a means of alternative dispute resolution. "We have consistently stated that arbitration is the favored means of settling differences and arbitration awards are generally upheld unless an award clearly falls within the proscriptions of § 52-418 of the General Statutes."[4] (Internal quotation marks omitted.) State v.AFSCME, Council 4, Local 387, AFL-CIO, 252 Conn. 467, 473 (2000). "Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.)State v. AFSCME, Council 4, Local 387, AFL-CIO, supra, 474. "[I]t is the arbitrator's judgment that was bargained for and contracted for by the parties, and we do not substitute our own judgment merely because our interpretation of the agreement or contract at issue might differ from that of the arbitrator." (Citations omitted.) Stratford v. InternationalAssn. of Firefighters, AFL-CIO, Local 998, 248 Conn. 108, 115-16 (1999).
"Where the language of the arbitration clause indicates an intention on the part of the parties to include all controversies which may arise under their agreement, and where the record reveals no specific questions which the parties submitted to the arbitrator, the submission will be construed as unrestricted. . . . A submission is deemed restricted only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." "The significance, therefore, of a determination that an arbitration submission was unrestricted or restricted is not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of what they have done. Put another way, thesubmission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the CT Page 5780 arbitrators' decision." (Emphasis in original; citations omitted; internal quotation marks omitted.) United States Fidelity Guaranty Co.v. Hutchinson, 244 Conn. 513, 519-20 (1998).
Where the submission to arbitration is unrestricted, courts will not review the findings of fact and decisions on legal issues by the arbitrators. "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . ." (Citations omitted; internal quotation marks omitted.) Stratford v. International Assn. of Firefighters, AFL-CIO,Local 998, supra, 114-15. "[W]hen the parties have established the authority of the arbitrator, the extent of our judicial preview is delineated by the scope of the parties' agreement. . . . When the parties have not restricted the scope of the arbitrator's authority, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission." (Citations omitted; internal quotation marks omitted.) Schoonmaker v. Cummings Lockwood ofConnecticut, P.C., 252 Conn. 416, 426 (2000). "It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results. . . . [T]he parties should be bound by a decision that they contracted and bargained for, even if it is regarded as unwise or wrong on the merits." (Internal quotation marks omitted.) Saturn ConstructionCo. v. Premier Roofing Co., 238 Conn. 293, 304 (1996). "[W]e adhere to the long-standing principle that findings of fact are ordinarily left undisturbed upon judicial review." Schoonmaker v. Cummings Lockwood ofConnecticut, P.C., supra, 432. "On review of an arbitration award . . . neither the trial court nor this court has authority to make findings of fact that the arbitrator did not make." Groton v. United Steelworkers ofAmerica, 252 Conn. 508, 523 (2000). The Groton court suggests that the factual findings by the arbitrator are binding on the trial and the appellate courts.
On the other hand, arbitration is subject to the strictures of fundamental contractual principles and courts must protect parties' contractual intent and provisions regarding whether they have agreed to submit their disputes to arbitration and the scope of the submission to arbitration. "[A]rbitration is a creature of contract. . . . [T]he arbitrator is governed by the terms of the parties' contract. . . . It is also that agreement that sets limits on the arbitrator's authority. In negotiating the agreement, the parties are free to bargain for whatever terms they choose. . . ." Stratford v. International Assn. ofCT Page 5781Firefighters, AFL-CIO, Local 998, supra, 121-22. "Although the courts of this state encourage arbitration as a means of alternative dispute resolution, there are limits to this policy. Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. . . . No one can be directed to arbitrate a dispute who has not previously agreed to do so. . . ." (Citations omitted; internal quotation marks omitted.) Scinto v. Sosin, 51 Conn. App. 222,227 (1998).
"Although we have traditionally afforded considerable deference to the decisions of arbitrators, we have also conducted a more searching review of arbitral awards in certain circumstances. In Garrity v. McCaskey, [ [223 Conn. 1, 6 (1992)], this court listed three recognized grounds for vacating an award: `(1) the award rules on the constitutionality of a statute . . .; (2) the award violates clear public policy . . .; or (3) the award contravenes one or more of the statutory prescriptions of § 52-418 (a). . . .'" (Citations omitted.) Schoonmaker v. Cummings Lockwood of Connecticut, P.C., 427-28. "Section 52-418 (a)(4) provides that an award shall be vacated if `the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.' In our construction of § 52-418 (a)(4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers." Garrity v. McCaskey,223 Conn. 1, 7 (1992).
The grounds for judicial review and vacating of arbitral awards, where the submission to arbitration is unrestricted are exceptionally narrow. "We emphasize, however, that the `manifest disregard of the law' ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." "In order to prevail, the defendant must demonstrate that the award reflects an egregious or patently irrational rejection of clearly controlling legal principles." "[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a)(4) because the arbitrator has `exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.'" Garrity v. McCaskey, supra, 10-11. In Garrity "we adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a)(4). Id., 8, citing Merrill Lynch, Pierce, Fenner Smith, Inc. v. Bobker, 808 F.2d 930, 933-34 (2d Cir. 1986). The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was CT Page 5782 obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable. Id., 9." Saturn Construction Co. v. Premier Roofing Co.,
supra, 305.
Courts have adopted the "positive assurance test" in determining the scope of the submission to arbitration in subject matters or on issues where it is ambiguous whether there is an unrestricted submission to arbitration. "We initially note that, because we favor arbitration, we will defer to this alternative method of dispute resolution if the contractual arbitration provisions fall within the grey area of arbitrability, employing the `positive assurance' test as set out inUnited Steelworkers of America v. Warrior Gulf Navigation Co.,363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Under this test, judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" (Emphasis in original; internal quotation marks omitted.) White v. Kampner,229 Conn. 465, 473 (1994).
"Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." (Emphasis in original.) Stratford v. International Assn. of Firefighters, AFL-CIO,Local 998, supra, 122, quoting W. R. Grace Co. v. Local Union 759,International Union of United Rubber, Cork, Linoleum Plastic Workersof America, 461 U.S. 757, 765, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (emphasis added). The Appellate Court, however, has cautioned that "the broad arbitration clause does not, by itself deny the trial court jurisdiction to decide the matter of arbitrability" if "the parties did not manifest an intention to arbitrate the issue of arbitrability."Scinto v. Sosin, supra, 230. The Scinto court went on to say that "[w]hether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to abitrate that question, also . . . Whether the parties intended to submit the issue of arbitrability, as well as the merits of a claim, to an arbitrator clearly depends on the parties' intent. Whether the parties intended to arbitrate the issue of arbitrability may be determined from an express provision to that effect or from the use of CT Page 5783 broad terms. . . . Unless the agreement shows such intent, the determination of the question of the arbitrability remains a function of the court. . . . The courts, however, must not fail to examine the plain language of the contract and look at it as a whole in determining the parties' intent." (Citations omitted; internal quotation marks omitted.)Scinto v. Sosin, supra, 227-28.[5]
"[T]here are two procedural routes by which a party may preserve the issue of arbitrability of a particular dispute for judicial determination. First, a party may refuse to submit to arbitration at the outset and instead compel a judicial determination of the issue of arbitrability. . . . Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute. . . . In such cases a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits in the parties' agreement with respect to arbitration. . . . Thus, the mere conformity of the submission to the award does not foreclose the court from reviewing whether that award is in violation of the parties' agreement." (Citations omitted; internal quotation marks omitted.) White v. Kampner, supra, 476.
Despite its submission to arbitration, the District has not waived judicial review of its objection to the arbitrability of the parties' claims and counterclaims. Before and during the arbitration proceedings, the District repeatedly objected to the jurisdiction of the arbitrators and contested the arbitrability of certain issues by claiming that its architect had exclusive and final authority to determine any of Wayne's claims under the terms of the contract. Alternatively, it argued that Wayne had failed to file its demand for arbitration in a timely manner under the terms of the contract and had thereby waived its right to arbitration. It also objected that the arbitrators had no authority under the terms of the contract to award delay damages, extra work costs for additional work, or prejudgment interest on a debt from a point in time before it was incurred. In addition, the District argued that Wayne's surety Hartford, was not a party to the original agreement to arbitrate and therefore the arbitrators had no authority to decide on the separate business arrangements between Wayne and Hartford. Therefore, it is for the court to decide the arbitrability of Wayne's claims as well as the terms of the agreement to arbitrate.
The crucial issue regarding the District's application to vacate the award is whether the parties' submission to arbitration under the contract is unrestricted. Wayne argues that the submission is unrestricted by virtue of paragraph 4.5.1 of the standard agreement, which provides, in broad and sweeping language, that "[a]ny controversy CT Page 5784 or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration. . . ."
In contrast, the District argues that subparagraph 4.3.2 of the supplementary agreement has modified or superseded paragraph 4.5.1 of the standard agreement.[6] This provision in the supplementary agreement provides, in pertinent part, that the "Architect's decision and interpretation" on such matters as "[a]ll claims, requests for extras, extensions of time, or interpretation of the Contract drawings" "shall be binding, and shall be accepted by the Contractor and the Owner in all cases." In addition, the "Architect's decision in such instances shall not be subject to any subsequent review in any court or legal proceeding." Finally, "[i]n the event there is a conflict of this provision and any other provision of the Contract as to the effect of the Architect's decision, this provision shall prevail." The District argues that the determination by the architect that Wayne had not achieved "substantial completion" as of September 24, 1994, in connection with its review of Wayne's revised application for payment number 10, is a "claim" as defined in subparagraph 4.3.1 of the standard agreement,[7] and as such is not reviewable by the arbitrators under the terms of paragraph 4.3.2 of the supplementary agreement. The District argues that by second-guessing the architect's decisions, which are binding, final and nonreviewable, as to this and other matters, the arbitrators have exceeded the powers granted to them in the contract, and their award should be vacated under § 52-418 (a)(4) of the General Statutes.
The court is satisfied that the contract, viewed in its entirety, shows an unambiguous agreement by the parties to an unrestricted submission to arbitration. There is no merit in the District's argument that article 4.3.2 of the supplementary agreement has restricted the power of arbitrators to review a decision of the architect on any "claim," or even superseded the arbitration clause in the standard agreement. Paragraph 4.3.2 of the supplementary agreement plainly means that a decision by the architect on technical matters, such as claims or requests for extras, extensions of time, or interpretations of the contract drawings, is final and binding on the parties. The article does not provide that the architect's decisions are binding on the arbitrators as well. It does not provide that the architect has the final word on any claim or controversy arising out of or related to the contract. Otherwise, there would be no need for arbitrators to render a full and final settlement of any claim or controversy arising out of or related to the contract, as provided by the arbitration clause of the standard agreement, which has not been modified in any way. The nonreviewability claimed by the District only means that a decision by the architect on technical issues cannot be challenged on the merits by CT Page 5785 either of the parties in any legal proceedings. However, it does not mean that the decision is final and binding on the arbitrators or the court. The arbitrators or the court may consider the architect's decisions but are not obligated to accept any. The same goes for the preemption claim (that article 4.3.2 of the supplementary agreement trumps any other provisions in the contract). It does mean that a decision by the architect on the merits of the technical issues is final and binding on the parties, but this particular agreement on the finality of the architect's decisions on technical issues cannot prevent either of the parties to submit any claim or controversy to arbitration, as authorized by the contract.
Despite the modification to the provision regarding the architect's decisions, which is apparently imprecise, the contract, taken as a whole, manifests an unmistakable intent by the parties to submit any claim or controversy to the arbitrators without any restriction for complete and final settlement. With regard to those provisions in the standard agreement which have been "revised" or "replaced" by relevant provisions of the supplementary agreement, article 1.02(a) of the supplementary agreement provides that "[s]uch revisions or replacements shall take precedence over the AIA General Conditions." In comparison, with regard to those provisions which have been "supplemented," "the MA provisions of such Article shall remain in effect," and "[a]ll the supplementary provisions shall be considered as added thereto." (Supplementary agreement, art. 1.02(b).) Specifically, "[w]here any such article is amended, voided, or superseded thereby, the provisions of such Article [in the standard agreement] not so specifically amended, voided, or superseded shall remain in effect." (Id.) The supplementary agreement contains a section entitled "amendment of article 4 — claims and disputes."
Aside from two deletions and replacements (including the aforementioned subparagraph 4.3.2) and an addition to the corresponding section of the standard agreement, the supplementary agreement had made no further changes to article 4 provisions in the standard agreement. Importantly, left unchanged in the standard agreement are subparagraph 4. 1.4 and the entire paragraphs of 4.4 (resolution of claims and disputes) and 4.5 (arbitration). Under the explicit terms of the supplementary agreement, the provisions left unchanged in the standard agreement, that is, those "not so specifically amended, voided, or superseded," "shall remain in effect." (Supplementary agreement, art. 1.02(b).)
Subparagraph 4.1.4 provides that "[d]isputes arising under Subparagraphs 4.1.2 [regarding duties, responsibilities and limitations of authority of the architect] and 4.1.3 [regarding replacement of the architect] shall be subject to arbitration." (Emphasis added.) CT Page 5786 Subparagraph 4.4.4 provides, in pertinent part, that "[i]f a Claim has not been resolved after consideration of the foregoing and of further evidence presented by the parties or requested by the Architect, the Architect will notify the parties in writing that the Architect's decision will be made within seven days, which decision shall be finaland binding on the parties but subject to arbitration." (Emphasis added.) The wording of clause 4.5.4.1 reinforces the clear intent that the architect's decisions are only final and binding on the parties but subject to arbitration. It provides, in pertinent part, that "[w]hen a written decision of the Architect states that (1) the decision is finalbut subject to arbitration, and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days period shallresult in the Architect's decision becoming final and binding upon theOwner and Contractor." (Emphasis added.) These provisions, coupled with the unqualified and sweeping arbitration clause, unmistakably manifest a clear choice by the parties for an unrestricted submission to arbitration.
The District has failed to cite any authority to support its claim that the architect has the purported final decision-making authority on contract claims where the contract also contains a broad arbitration clause by the parties, who are signatories to the arbitration clause embedded in the contract. Existing case law clearly points to the contrary. Both the trial court and the Appellate Court considered and rejected a similar argument in Forge Square Associates Ltd. Partnershipv. Construction Services of Bristol, Inc., 43 Conn. Sup. 32 (1993), aff'd, 33 Conn. App. 669 (1994). The Appellate Court, in addition to its own opinion, has specifically adopted "the trial court's well reasoned decision as a statement of the facts and the applicable law" in the case.Forge Sq. Associates Ltd. Partnership v. Construction Services ofBristol, Inc., supra, 673. In Forge Square, a dispute arose between the parties to a construction contract and the owner referred the matter to the architect who, after an investigation, certified that sufficient cause existed for the owner to terminate the employment of the contractor. The parties submitted their claims and counterclaims to a panel of arbitrators pursuant to a broad arbitration clause in their contract. After the verdict, the parties made their respective motions to confirm and vacate the award.
The owner in Forge Square argued, as did the owner in the present case (see the District's motion to the arbitration panel to dismiss Wayne's demand for arbitration), that the "architect's decision, under state law, is final and binding absent bad faith, fraud or gross misconduct by the architect. . . ." Forge Square Associates Ltd. Partnership v.CT Page 5787Construction Services of Bristol, Inc., supra, 35.[8] (See n. 8.) As did the owner in the present case (see the District's request to the arbitrators to bifurcate the hearing), the owner presented to the arbitrators the issue whether the architect acted in good faith in certifying that grounds existed for the termination of the employment of the contract. Forge Square Associates Ltd. Partnership v. ConstructionServices of Bristol, Inc., supra, 34. The arbitrators in Forge Square
issued a written decision but gave no rationale for their decision. The owner there, as the owner here, argued that in refusing to enforce the parties' contract by deferring to the architect's decision, the arbitrators demonstrated a manifest disregard for the law and so exceeded their powers or so imperfectly executed them that a mutual, final and definite award was not made.
Both the trial court and the Appellate Court in Forge Square rejected the argument. The trial court noted that "both sides left no stone unturned in their advocacy for their respective clients" before the panel of arbitrators, "[a]ll pertinent issues were presented to the panel orally and in briefs," "[t]here was an exhaustive presentation of evidence, every argument presented to this court on the application to vacate and on the motion to confirm the arbitration award was emphatically asserted to the panel," and that "[t]he panel had the opportunity to evaluate the credibility of the witnesses after observing their demeanor and the way they responded to questions posed to them on direct examination and on cross-examination." Forge Square AssociatesLtd. Partnership v. Construction Services of Bristol, Inc., supra, 657-58. The court found that although it does not know the reason for the decision of the arbitrators, the record in the present case indicated many possible bases for that decision. The arbitrators may have concluded that the architect's decision to terminate the defendant was not final and binding on them, even if there was no showing of arbitrariness, bad faith, fraud or gross misconduct, and that they, therefore, could conclude that the termination was improper. Conversely, the arbitrators could have determined that the architect's certificate was issued arbitrarily and, therefore, subject to rejection. They could have decided that the plaintiff waived its right to terminate the defendant, or that the plaintiff's right to terminate was barred because the plaintiff itself was in breach of the contract.
The court in Forge Square stresses that the considerations above were not dispositive of the issue before it whether to vacate an award. The issue was not whether the arbitrators' decision was factually or legally correct, wise or reasonable. Rather, the issue was whether the arbitrators' decision was "egregious or patently irrational" in its "rejection of clearly controlling legal principles." "The court does not know, nor does it need to know the precise reason or combination of CT Page 5788 reasons for the award. The court does know that in order for an award to be vacated, the plaintiff must demonstrate that the award reflects not only a rejection of clearly controlling legal principles, but also that such a rejection is egregious or patently irrational. In conformity toGarrick v. McCaskey, supra, this court will not review the award for errors of law." Forge Square Associates Ltd. Partnership v. ConstructionServices of Bristol, Inc., supra. Having found that the award conformed to the submission and that the plaintiff had not demonstrated that the award reflected an egregious or patently irrational rejection of clearly controlling legal principles, the court confirmed the award in ForgeSquare.
The court finds that the submission to arbitration in the present case is unrestricted on the basis of the broad language of the arbitration clause. See United States Fidelity Guaranty Co. v. Hutchinson, supra, 519; JCV Investment Group, Inc. v. Manjoney, 56 Conn. App. 320, 324-25
(2000). As in Forge Square, the contract in the present case contains both a provision for the finality of the architect's decisions on the parties and a broad arbitration clause that gives the arbitrators the ultimate authority to decide and settle any claim or controversy arising out of and related to the contract. As long as the parties have so empowered the arbitrators for a full and final settlement of any and all claims under the contract, and the arbitration clause is unconditioned, as it is the case here, the arbitrators were not obligated, as a matter of law, to accept the architect's decisions, notwithstanding the provision for the finality of the architect's decisions with regard to technical issues, which are binding only on the parties. See ForgeSquare Associates Ltd. Partnership v. Construction Services of Bristol,Inc., supra. Where the submission to arbitration is unrestricted, "it is within the province of the arbitrator to interpret every provision in the agreement before him or her, including the meaning to be ascribed to the phrase `final and binding.'" Stratford v. International Assn. ofFirefighters, AFL-CIO, Local 998, supra, 123.
Contrary to the claim that the arbitrators were "craven" not to have issued a formal memorandum of decision to support their written decision (see the District's trial brief in support of application to vacate award, p. 4), the arbitrators had no obligation either to justify their award by issuing a formal memorandum of decision. As the Forge Square
court points out, there is no need for the court to know "the precise reason or combination of reasons for the award." See Forge SquareAssociates Ltd. Partnership v. Construction Services of Bristol, Inc.,
supra. Because the contract contains an arbitration clause that is unrestricted in its submission to arbitration and the award conforms to the unrestricted submission, the court will not review the award "merely for errors of law." See Garrity v. McCaskey, supra; Stratford v.CT Page 5789International Assn. of Firefighters, AFL-CIO, Local 998, supra; ForgeSquare Associates Ltd. Partnership v. Construction Services of Bristo,Inc., supra.
The cases cited by the District do not support their claim that the architect's decisions in this case are final and binding on the arbitrators. The parties did not provide for arbitration to settle their disputes in John T. Brady Co. v. Stamford, 220 Conn. 432 (1991),Grenier v. Compratt Construction Co., 189 Conn. 144 (1983); or M LBuilding Corp. v. Housing Authority, 35 Conn. App. 379 (1994), so these cases are inapposite. Noroton Heights Fire Dept. v. Vuono-Lione, Inc.,168 Conn. 276 (1975), also cited by the District, supports the contrary position. In that case, the construction contract provided for arbitration of any claim or dispute except those relating to artistic effect. In its application to stay arbitration proceedings, the owner argued that the contractor violated provisions of the contract calling for the floor to be of green color and to be free of blemishes from poor workmanship. The Supreme Court affirmed the trial court's decision denying the owner's application to stay arbitration and ruling that disputes over floor color and blemishes from defective workmanship were not excluded from the arbitration agreement as matters of "artistic effect." The court held that disputes on the question whether the contractor properly fulfilled its obligations under the contract, including among the specifications for the work the color achieved by compliance with those specifications was clearly subject to arbitration under the terms of the parties' agreement while leaving any question as to the artistic effect to the decision of the architect. The arbitration clause in the present case is similarly broad and all inclusive except as to controversies and claims relating to "aesthetic effect." The District has raised no "aesthetic effect" exception, but even so, underNoroton Heights, the determination of compliance with specifications as to matters of aesthetic or artistic effect would be arbitrable. As a matter of law, as well as a matter of contract construction, the architect's decisions in the present case are arbitrable, as so provided in the arbitration clause of the contract, and the submission to arbitration is unrestricted under the terms of the contract.
The District has repeatedly argued that the arbitrators exceeded their authority in not determining that Wayne had waived its right to arbitrate by failing to submit to arbitration in a timely manner. The arbitrators denied the District's argument several times, and that its argument in this regard must fail as a matter of law as well as a matter of contract construction.
Clause 4.5.4.2 of the standard agreement provides that "[a] demand for arbitration shall be made within the time limits specified in CT Page 5790 Subparagraphs 4.5.1[9] and 4.5.4[10] and Clause 4.5.4.1[11] as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7 [regarding commencement of statutory limitation period]." The District conceded that "the architect's letters of October 7 and 14, 1994 [purportedly concluding that Wayne had not achieved `substantial completion'] did not go on to recite that the decision was final but subject to arbitration, or to state that the demand for arbitration was to be made within 30 days after receipt." (District's trial brief in support of application to vacate, pp. 29-30.) Such a written decision giving the requisite notice as to the finality of the architect's decision and the thirty day limit to a demand for arbitration is an explicit condition precedent under the terms of clause 4.5.4.1 that would "result in the Architect's decision becoming final and binding upon the Owner and Contractor." Nevertheless, the District dismisses the requirement of this explicit condition precedent by arguing that there was no need for the architect to include the requisite statement in his letters because the architect's decisions were final and binding and not subject to arbitration under the contract. The District's argument is without merit either under the terms of the contract or under the existing case law, as discussed in the previous section.
The District also argues that Wayne's right to arbitrate became ripe in November, 1994, when the architect made its decision that Wayne had failed to achieve "substantial completion" and when Wayne's alleged damages had become liquidated. The District argues that by not demanding arbitration within the thirty day period, or alternatively, within a "reasonable period," as contemplated under clause 4.5.4.2, Wayne had effectively waived its right to arbitration by having delayed three years, until 1997, to demand arbitration, and the long delay cannot have been the "reasonable time." This argument is equally meritless. Under Connecticut law, where the submission to arbitration is unrestricted, the question of timeliness in demanding arbitration is solely for the arbitrators to decide.
"We agree that whether the demand was made within a reasonable time should be decided by the arbitrators. Because the phrase `reasonable time' is a part of the contractual provision here, its meaning in a given case is a matter of contract interpretation and is, therefore, arbitrable. What is a reasonable time presumably will depend on all of the circumstances, including a showing of prejudice to the resisting party, which matters are inevitably intertwined with the merits and involve a weighing of the equities in the context of the particular case. CT Page 5791 At least one purpose for requiring arbitration is that the parties thought that arbitrators would be more likely to reach an expeditious, satisfactory resolution of their disputes than would a court. . . . Having the arbitrators decide whether the claim was asserted within a reasonable time within the meaning of the contract avoids the possibility that evidence must be presented twice." East Hartford v.East Hartford Municipal Employees Union, Inc., 206 Conn. 643, 653 (1988), quoting Union County School District v. Valley Inland PacificConstructors, Inc., 652 P.2d 349, 354 (Or.App. 1982). This court inGary Excavating, Inc. v. North Haven, 164 Conn. 119, 121-25 (1972), held that when a contract provides for unlimited submission of disputes to arbitration it is a matter for the arbitrators, not the courts, to determine whether a party has waived its contractual right to arbitration because of untimeliness in pursuing a complaint. We hold that a trial court may not substitute its own finding of untimeliness for the arbitrators' finding of timeliness when, as part of an unlimited submission to arbitration, the parties have contractually empowered the arbitrators to decide the question of arbitrability.
The District concedes that clause 4.5.4.2 of the standard agreement presents the applicable statutes of limitations, presumably the six year statute for written contracts under § 52-576 (a) of the General Statutes, as an alternative basis for timeliness, and that Wayne's demand for arbitration was made within the six year limit, but nevertheless argues that the court should disregard this alternative basis and hold Wayne to the shorter thirty-day or "reasonable time" limit. Its argument must fail as a matter of law because courts cannot vacate an arbitral award even if the arbitrators wrongly applied the applicable statutes of limitations, which is not the case here. InGarrity v. McCaskey, the defendant contended that the arbitrators' allegedly erroneous consideration of relevant statutes of limitations so manifestly disregarded the law as to warrant vacating of the award. The court, however, rejected the argument. "Even if the arbitrators were to have misapplied the law governing statutes of limitations, such a misconstruction of the law would not demonstrate the arbitrators' egregious or patently irrational rejection of clearly controlling legal principles. The defendant's claim in this case falls far short of an appropriate invocation of § 52-418 (a)(4) for a manifest disregard of the law." Garrity v. McCaskey, supra. The District's argument that Wayne has waived its right to arbitration because of its untimely demand for arbitration must fail as a matter of law as well as a matter of contract construction.
The District also argues that the damages awarded by the arbitrators to Wayne are excessive or precluded by the various provisions of the contract. It continues that the arbitrators were not authorized to award CT Page 5792 any damages to Wayne that accrued after its wrongful termination of Wayne. In addition, the District argues that the contract precludes damage claims for extra work. Finally, the District argues that the arbitrators did not have authority under the contract to award delay damages.[12]
Relying on Garrity v. McCaskey, supra, Wayne argues that under Connecticut law, even if the arbitrators misinterpreted the contract or made other errors of fact and law with regard to the damages awarded, unless the District can demonstrate that the errors rise to the level of an "egregious or patently irrational rejection of clearly controlling legal principles," there can be no judicial review of the award. Nevertheless, Wayne argues that the arbitrators were correct on the law, that the law supports an award of damages naturally flowing from contractual breaches, citing Beckman v. Jalich Homes, Inc., 190 Conn. 299,309 (1993); West Haven Sound Development Corp. v. West Haven, 201 Conn. 305,319 (1996); that the District had a duty to grant an extension of time under clause 4.3.8.1 of the supplementary agreement for owner-caused delays, that we have recognized four exceptions where delay damages would be available to a contractor despite a "no damages for delay" clause, citing White Oak Corp. v. Department of Transportation,217 Conn. 281, 289 (1991), and that where the District failed to make substantial progress payments when due, it should not be allowed to avail itself of the exculpatory provisions of the contract, citing TheSilliman Co. v. S. Ippolito Sons, Inc., 1 Conn. App. 72, 75 (1983), cert. denied, 192 Conn. 801, 470 A.2d 1218 (1984); Morici v. Jarvie,137 Conn. 97, 101 (1950). Wayne has also cited case law in support of its argument that the arbitrators were legally correct in awarding damages for the additional work caused by the District's breach.
However, where the submission to arbitration is unrestricted, as here, the court will not review de novo the merits of the arbitrators' decision with regard to their findings of fact or conclusions of law in their award of damages. See Stratford v. International Assn. ofFirefighters, AFL-CIO, Local 998, supra. Even if the arbitrators made errors of fact or law, the court cannot vacate the award. SeeSchoonmaker v. Cummings Lockwood of Connecticut, P.C., supra. Therefore, what is at issue here is not whether the arbitrators were correct in their construction of facts or law with regard to the determination of damages, but whether their errors, if any, "manifest an egregious or patently irrational application of the law." See Stratfordv. International Assn. of Firefighters, AFL-CIO, Local 998, supra;Schoonmaker v. Cummings Lockwood of Connecticut, P.C., supra, 432;Saturn Construction Co. v. Premier Roofing Co., supra, 304-305; Garrityv. McCaskey, supra. In Garrity v. McCaskey, the "defendant also maintains that the trial court should have vacated the award because of CT Page 5793 an alleged misapplication of the law of remedies." The court therein rejected the argument, as with his claim of manifest disregard of the law of statutes of limitations, it would not decide the merits of this claim because the defendant had not demonstrated anything more than his disagreement with the arbitrators' interpretation and application of established legal principles. Such a contention is a far cry from the egregious or patently irrational misperformance of duty that must be shown in order to prove a manifest disregard of the law under § 52-418
(a)(4). Acceptance of that argument would have turned every disagreement with arbitrators' rulings of law into an allegation of manifest disregard of the law. The burden is on the District to demonstrate that the arbitrators' errors, if any, rose to the level of an egregious or patently irrational rejection of clearly controlling legal principles. The District has failed to satisfy the burden because it has not demonstrated anything more than its disagreement with the arbitrators' interpretation and application of established legal principles. Garrity v. McCaskey, supra.
The District recites that the arbitrators lacked the authority to award interest pursuant to § 37-3a of the General Statutes[13] on the full amount of the award commencing on November 22, 1994, when the District terminated Wayne's contract. It claims that some of the damages awarded by the arbitrators did not accrue until after 1994, and that because § 37-3a only authorizes interest on amounts wrongfully detained after the money becomes due and payable, the arbitrators' wrongful application of the statute manifested an egregious or patently irrational rejection of clearly controlling legal principles.
The District's argument in this regard must also fail as a matter of law for the same reason that it "has not demonstrated anything more than [its] disagreement with the arbitrators' interpretation and application of established legal principles." See Garrity v. McCaskey, supra. Section 37-3a provides for recovery of interest in civil actions "as damages for the detention of money after it becomes payable," and "its purpose is to compensate plaintiffs who have been deprived of the use of money wrongly withheld by defendants." See Paulus v. LaSala,56 Conn. App. 139, 151 (1999). Paulus continues on to say that the date the interest begins to run pursuant to § 37-3a is factual because it necessarily involves a determination of when the wrongful detention began. Under Connecticut law, "findings of fact [made by the arbitrators] are ordinarily left undisturbed upon judicial review."Schoonmaker v. Cummings Lockwood of Connecticut, P.C., supra; see alsoGroton v. United Steelworkers of America, supra ("neither the trial court nor this court has authority to make findings of fact that the arbitrator did not make"). Based on the voluminous evidence presented to them, the arbitrators could have reasonably made the findings of fact CT Page 5794 regarding the date the interest began to run. The Groton court suggests that the factual findings made by the arbitrators are ordinarily binding on the trial and appellate courts. Groton v. United Steelworkers ofAmerica, supra, 524. The award of interest here, in this case, based on the arbitrators' factual determination of the date the interest began to run, is not subject to the review of the court. The District has failed to meet the burden of demonstrating that the arbitrators misapplied the law on awarding interest under § 37-3a, let alone that their error manifested "an egregious or patently irrational rejection of clearly controlling legal principles."
Finally, the District asserts that the arbitrators exceeded their power in awarding damages arising from transactions between Wayne and its surety Hartford, because Hartford was not a party to the arbitration agreement between it and Wayne and therefore Hartford's claims were not arbitrable. It claims that whatever obligations and costs Wayne incurred in satisfying the post-breach settlement agreement with Hartford, were for the benefit of Hartford, rather than for it, and were not required by its contract with Wayne. The District argues further that it did not have notice of Hartford's claims until the arbitration proceedings held in 1999, and it should not be held liable for damages that occurred outside the project site. In addition, it argues that one of the categories awarded by the arbitrators, in the amount of $266,089, exceeds the sum of $219,623 due to Hartford under the settlement agreement between Wayne and Hartford, dated September 15, 1997, and therefore the arbitrators acted in excess of their authority.
The District's claim here must again fail as a matter of law as well as contract construction. Its reliance on subparagraph 4.5.5 of the standard agreement was misplaced.[14] That paragraph allows the arbitrators to adjudicate the claims of "other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration." The performance bond entered into between Wayne and its surety Hartford, dated September 15, 1993, jointly and severally binds Wayne and Hartford to the District for the performance of the construction contract, and the performance bond expressly incorporates by reference therein the construction contract. Significantly, it was the District that terminated Wayne's contract and called in its surety Hartford, to finish the project, and Hartford did not object the arbitrability of its claims. Either as a matter of fact finding or contract construction, the arbitrators could have reasonably found that Hartford was a person "substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration." Therefore, where the submission to arbitration was unlimited, the arbitrators had every discretion to adjudicate Hartford's claims arising under the performance CT Page 5795 bond. See Stratford v. International Assn. of Firefighters, AFL-CIO,Local 998, supra (no judicial review of arbitrators' decisions of factual or legal questions where submission to arbitration is unlimited). The District's challenge to the amount of the arbitrators' award under the settlement agreement must also fail as a matter of law because in order to determine that the particular part of the award under the settlement agreement is excessive, the court would be required to review all the evidence presented to the arbitrators. As Wayne puts it, judicial review in this regard "would require an extensive analysis of the Surety's construction costs, consultants' costs, attorney fees, and payment bond claim expenses." (Wayne's memorandum of law in opposition, p. 23.) Such judicial review of arbitrators' findings of fact is impermissible where the parties submission is unrestricted. See SaturnConstruction Co. v. Premier Roofing Co., supra, 304; Groton v. UnitedSteelworkers of America, supra, 523-24. Assuming, arguendo, that even if the arbitrators were wrong in awarding the extra damages, the District has not carried the burden of demonstrating that the error manifested "an egregious or patently irrational rejection of clearly controlling legal principles."
The District has failed to demonstrate anything more than its disagreement with the arbitrators' findings of fact, interpretation and application of established legal principles in its application to vacate the award. "Such a contention is a far cry from the egregious or patently irrational misperformance of duty that must be shown in order to prove a manifest disregard of the law under § 52-418 (a)(4)."Garrity v. McCaskey, supra. The District's application to vacate the award is denied, Wayne's application to confirm the award is, accordingly, granted.
Moraghan, J.